## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 17 2015, 8:40 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

James C. Spencer
Datillo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: K.C.

And

G.C. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

August 17, 2015

Court of Appeals Case No. 39A01-1501-JT-18

Appeal from the Jefferson Circuit Court

The Honorable W. Gregory Coy, Special Judge

Cause No. 39C01-1310-JT-08

**Bailey, Judge.**

# Case Summary

G.C. ("Father") appeals the termination of his parental rights to K.C. ("Child"), upon the petition of the Jefferson County Department of Child Services ("the DCS"). We affirm.

# Issues

Father presents two issues for review:

I. Whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision; and

II. Whether the trial court abused its discretion by denying Father's motion for a continuance in order to have his parental fitness evaluated after his release from incarceration.

# Facts and Procedural History

Child was born in March of 2008 to T.H. ("Mother") and Father. Mother and Father lived together for approximately one to two years after Child's birth. Each of them struggled with drug addiction. In 2010, Mother gave birth to another child, whose paternity was established in B.M. In May of 2012, both children were removed from Mother's care due to her substance abuse and inability to adequately supervise her children. Father was then incarcerated, serving a sentence for Forgery.

[4] On November 28, 2012, Child was found to be a Child in Need of Services ("CHINS") and Mother was ordered to participate in services. The CHINS dispositional order was later modified to order Father's participation in services after his release from prison.[1] Father was offered intensive outpatient therapy, drug screening, and visitation; he participated sporadically. During the pendency of the CHINS proceedings, Father was found in contempt of court for tampering with drug screens and facilitating visits between Child and Mother in violation of a no-contact order involving Father and Mother.

[5] On October 30, 2013, the DCS petitioned to terminate the parental rights of Mother, Father, and B.M. One year later, after change-of-judge proceedings, a fact-finding hearing was conducted on October 1 and 2, 2014 and on December 9 and 10, 2014. Father, who was then incarcerated on a probation violation following an arrest for domestic violence, was transported to court. At the outset of the hearing, he requested a continuance until his anticipated release date of March 20, 2015; the request was denied. During the hearing, Mother and B.M. each affirmatively assented to the termination of his or her parental rights. The hearing then proceeded as a contested hearing with regard to only Father's parental rights.[2]

---

[1] Father was incarcerated for Forgery from November 30, 2012 to June 6, 2013.

[2] Neither Mother nor B.M. is an active party on appeal.

[6] At the conclusion of the hearing, the trial court orally granted the termination petition. On January 5, 2015, the trial court entered its findings of fact, conclusions, and order. Father now appeals.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[7] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

## Requirements for Involuntary Termination of Parental Rights

[8] Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> (iii)     The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions.

*In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

## Analysis

[11] Father contends that insufficient evidence supports the termination decision. He does not challenge the trial court's determination pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent), but challenges the determinations relating to Sections 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being), (C) (best interests), and (D) (satisfactory plan).

[12] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See L.S.*, 717 N.E.2d at 209. Here, Father argues that the DCS failed to establish, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i). Also, Father is very critical of the DCS plan to place Child in a foster home when the prospective foster parents have not specifically agreed to adoption and Father will ostensibly be ready to parent after a relatively short-term incarceration. According to Father, "at the time he was arrested in April 2014 Father was otherwise doing everything he needed to do," he "had a four-month period of doing things right," and "had he not got arrested for a domestic situation and

jailed for forty-five days followed by a probation violation, it is likely that Father's visitation with K.C. could have resumed and the parent-child relationship could have been eventually restored, since his incarceration problem had been remedied." (Appellant's Br. at 11, 14.)

[13] The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Initially, the DCS removed Child from Mother's care because of Mother's drug use and inability to provide for her children's essential needs, including supervision. At that time, Father was incarcerated and thus could not provide for Child's essential needs.

[14] By the time of the termination hearing, Father was again incarcerated. Although he claims that he had otherwise been in compliance with the CHINS dispositional order, the evidence before the trial court does not support this assessment. Father submitted to drug screens, but several of them were not usable. Father later admitted to tampering. At least one screen tested positive for methamphetamine. Some screens tested positive for prescription drugs but Father was unable to produce current prescriptions.

[15] Father participated in visitation, initially with positive parent-child interactions. However, after an unsupervised visit in Father's home, Child reported witnessing an incidence of domestic violence. Father minimized the incident

and denied that Child had accurately described it. However, Child was very agitated and reported to her therapist having witnessed physical violence between her parents in the past.

[16] When visitation was changed back to supervised visitation because of safety concerns, Father's attitude became oppositional and he complained in the presence of Child. He cancelled or was a no-show for multiple visits. His attendance at therapy sessions also became sporadic. Father was chronically plagued by transportation problems, an inability to maintain stable housing, and a lack of adequate and verifiable income.[3] During his incarceration, Father participated in one self-improvement program. However, he became ineligible for continuation in the program after three conduct write-ups.

[17] Father argues that some of the trial court's findings of fact are inaccurate or unduly critical of Father. In particular, he challenges the findings as to non-payment of child support, eviction, employment, and visitation, and the finding that he had not had Child in his exclusive care or custody. Father had not been ordered to pay child support and this fact was not specifically stated by the trial court. However, the trial court's statement that Father had not paid child support is technically correct. Father does not deny multiple evictions during

---

[3] Multiple witnesses testified that Father worked and DCS was able to verify that Father was briefly employed as a temporary worker at a factory. However, when the management discovered that Father was listed as ineligible-for-rehire, his temporary employment was terminated. It appears that he was generally able to obtain work with a relative and was paid in cash. However, he could not comply with DCS requests for a paycheck stub and the amount of his income was apparently insufficient to reliably meet the needs of Father and his family.

the CHINS proceedings, but points out that his wife leased one of the residences and he was not a named lessor. As for the trial court's finding that Father missed visitations, causing Child great distress, Father claims that only a single missed visit (where Child appeared, cried, and questioned Father's absence) was a cause of distress to Child. Finally, Father argues that the trial court should have credited his testimony that he was customarily employed and the testimony of Mother that she had frequently relied upon Father to care for Child.[4] In short, Father asks that this court reweigh the evidence and accord greater weight to the testimony of his efforts and future aspirations. This we cannot do. *In re A.A.C.*, 682 N.E.2d at 544.

[18]    As for Child's best interests and the adequacy of the DCS plan, Father's argument is essentially that Child's placement with a biological parent would be preferential to placement with an unidentified adoptive family. The DCS plan need not be detailed, "so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). Here, the plan for Child was placement with her sibling in a pre-adoptive foster home, an adequate plan.

---

[4] Even so, Mother did not directly contradict the trial court's finding that Father had not had the exclusive care or control of Child. Although Mother testified that Father sometimes had Child more than she did, this appears to reference a time when the parents shared custody of Child. Mother testified that she and Father lived together for a period of time after Child's birth. They lived with Father's sister. Mother described leaving Child in Father's care while she worked. She did not specifically testify that Father had Child in his exclusive care or control.

[19]    In determining what is in a child's best interests, the trial court is required to look beyond the factors identified by the DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). Father was incarcerated when Child was adjudicated a CHINS. Upon his release, he participated sporadically in services but was found in contempt of court for drug screen tampering and allowing visitation with Mother in violation of a no-contact order. He made some efforts with regard to employment, housing, and transportation but was unable to achieve stability in these areas for a significant period of time. By the time of the termination hearing, Father was again incarcerated, having pled guilty to a battery upon his current wife. The history of domestic violence between Father and Mother to which Child had been exposed caused her great anxiety. According to her therapist, it had been more than an isolated incident and Child had "traumatic memories." (Tr. at 505.) Child's guardian ad litem opined that Father was unable to achieve stability and recommended termination of Father's parental rights.

[20]    The DCS presented sufficient evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied, that termination of parental rights was in Child's best interests, and that there was a satisfactory plan for Child.

# Continuance

Generally, a trial court's decision to grant or deny a motion to continue is reviewed for an abuse of discretion. *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014). However, when a motion has been made to continue a termination hearing until a parent is no longer incarcerated, some of the factors previously applied to a motion to transport "help illuminate," *Id.* at 244, a review of whether the parent showed good cause for a continuance or if the denial was an abuse of discretion. As applied to a motion to transport, these factors were:

> the delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the effect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10) the inconvenience or detriment to parties or witnesses; and (11) any other relevant factors.

*Id.* at 244 (citing *In re C.G.*, 954 N.E.2d 910, 922-23 (Ind. 2011).

Father was physically present and testified at the termination hearing. As such, a number of the foregoing factors are not implicated. Father and the DCS focus upon the need for an early determination, length of pending proceedings, and detriment. "[N]o abuse of discretion will be found in the denial of a motion to

continue if the movant was not prejudiced as a result." *Id.* at 248 (citing *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*.)

Child had been removed from Mother's care more than two years before the termination hearing. On the first day of the termination hearing, Father orally requested a continuance. Father points out that he was requesting a delay of only a few months.[5] However, the delay was not a few weeks causing "a minimal inconvenience to all others involved," as in *In re K.W.*, 12 N.E.3d at 248. Too, our Supreme Court has recognized that, while a child's best interests is served by an accurate proceeding, "'children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships.'" *Id.* (quoting *In re C.G.*, 954 N.E.2d at 917).

Father also asserts that he suffered a significant detriment from the denial of the continuance, as his parental fitness was assessed during his incarceration. Father does not claim that an incarcerated parent has a due process right to have his parental fitness assessed after his release from incarceration. Rather, he argues that he would much more likely be able to provide for Child after his release and the provision of more services; as such, the assessment of parental

---

[5] Indiana Code Section 31-35-2-6(a)(2) provides that a trial court is to complete the hearing within 180 days after a petition to terminate parental rights has been filed. The failure to meet this deadline requires the trial court, upon motion by a party, to dismiss the petition without prejudice. Due to change-of-judge proceedings, the 180 day window had already been exceeded in this case.

fitness should take place when he was in a more favorable situation. However, during the CHINS proceedings, Father was not able to adequately benefit from services provided and to establish a safe and stable home for Child.

A delay of several months – to provide Father yet another bite at the apple – would have been detrimental to Child's best interests. We find no abuse of discretion in the trial court's denial of Father's motion to continue the proceedings until after his release from incarceration.

# Conclusion

The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights. The trial court did not abuse its discretion in denying the motion for a continuance of the proceedings until Father was no longer incarcerated.

Affirmed.

Baker, J., and Mathias, J., concur.